# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|                                   |   |                    |
|-----------------------------------|---|--------------------|
| **A.J. PROPERTIES, LLC,**         | ) |                    |
|                                   | ) |                    |
| **Plaintiff,**                    | ) |                    |
|                                   | ) | **Civil Action No.** |
| **v.**                            | ) | **11-10835-FDS**   |
|                                   | ) |                    |
| **STANLEY BLACK & DECKER, INC.,** | ) |                    |
|                                   | ) |                    |
| **Defendant.**                    | ) |                    |

_____)

## MEMORANDUM AND ORDER ON
## <u>RENEWED CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

**SAYLOR, J.**

This dispute concerns an $800,000 performance bond issued for the environmental remediation of a contaminated parcel of land in Worcester, Massachusetts. Plaintiff A.J. Properties, LLC alleges that defendant Stanley Black & Decker, Inc. wrongfully collected payment under the bond after Stanley had assigned its rights to those proceeds to a third party, the Wyman-Gordon Company. As the assignee of Wyman-Gordon with respect to various agreements concerning the remediation of the property, A.J. Properties contends that it is entitled to the proceeds of the performance bond and has filed suit against Stanley for, among other things, conversion, breach of contract, and various equitable claims.

The Court previously entered partial summary judgment for Stanley as to the breach of contract claims and partial summary judgment for A.J. Properties as to its claim that it was entitled to the proceeds of the performance bond. It reached that determination by applying the rule of law that "the assignment of a debt carries with it every remedy or security that is

incidental to the subject matter of the assignment and could have been used or made available to the assignor." *Quaranto v. Silverman*, 345 Mass. 423, 426-27 (1963).  Upon Stanley's motion for an interlocutory appeal, the Court instead stayed the litigation and certified a question to the Supreme Judicial Court concerning the applicability of the *Quaranto* rule to the particular facts of this case.

In response to the certified question, the SJC held:

> Where a mortgage and a surety agreement secured an obligation, and both the mortgagor and the surety committed a breach of that obligation prior to a written assignment of the mortgage, the assignee does not necessarily acquire the right against the surety's receiver for the surety's breach of its obligation.

*A.J. Properties, LLC v. Stanley Black & Decker, Inc.*, 469 Mass. 581, 592 (2014).  The SJC further held that "[i]f parties wish to assign such a cause of action, they may do so by manifesting their intent to do so, but, absent an express indication, assignment of such a cause of action will not be implied by an assignment of the mortgage and the obligations it secures."  *Id.*

After the SJC's ruling, the parties filed renewed cross-motions for summary judgment. For the following reasons, the Court's February 4, 2013 summary judgment order will be vacated, the motion of A.J. Properties will be denied, and the motion of Stanley will be granted.

## I.    Background

The following undisputed facts, which are more fully detailed in the Court's February 4, 2013 summary judgment order, are provided only for summary purposes.

### A.    Factual Background

In 1995, Stanley became aware of soil and groundwater contamination on its property located at 149 Washington Street in Worcester, Massachusetts ("the 149 property").  That contamination extended to an adjacent property owned by Wyman-Gordon.  In 1997, facing continuing liability for the contamination pursuant to Mass. Gen. Laws ch. 21E, § 5(a), Stanley

entered into an agreement with Vargo & Associates Environmental Consulting Corporation to remediate both properties.  Stanley agreed to pay Vargo $400,000 to perform the remediation, and to sell its property to Vargo for one dollar.  Vargo agreed to deliver a performance bond in the amount of $800,000 to secure its remediation, to deliver an indemnity agreement promising to complete the remediation and to hold Stanley harmless for future liabilities, and to grant Stanley a mortgage on the property.  The 1997 mortgage was to "secure all obligations" of Vargo to Stanley under the indemnity agreement, mortgage, and "all other agreements between" Stanley and Vargo, including any "indebtedness, obligations and liabilities" under "instruments . . . executed or delivered in conjunction (with the purchase and sale agreement or the indemnity agreement)."  In January 1998, Vargo obtained a performance bond to fulfill the final condition for closing on the sale.  The surety on the performance bond was the United Capitol Insurance Company.

Around August 2000, Vargo suspended remediation operations and, in early 2001, abandoned the property.  After learning that Vargo's principal had filed for bankruptcy, Stanley contacted United Capitol in February 2002 to demand that it, as the surety on the bond, complete the remediation of the 149 property and the Wyman-Gordon property.  Earlier that month, however, United Capitol had ceased operation, and liquidation proceedings had begun.  In October 2002, Stanley filed a proof of claim under the bond with United Capitol's receiver in the amount of $800,000.

In December 2002, Stanley entered into a settlement agreement with Wyman-Gordon to retain a different contractor to remediate the still-contaminated parts of the properties and to assign Wyman-Gordon the 1997 mortgage and the obligations secured by the mortgage at a

future date.  In February 2003, Vargo's creditors foreclosed on the 149 property, and A.J.

Properties purchased the right to acquire the property at the foreclosure sale.

In March 2003, after it reached the settlement with Stanley but before it had been

assigned the mortgage, Wyman-Gordon and A.J. Properties entered into an option agreement.

That agreement provided that, at any time at least one year after the agreement, and at A.J.

Properties' option, Wyman-Gordon would assign it the 1997 mortgage on a portion of the 149

property, along with "all rights that Wyman-Gordon has to the obligations and debts which the

[1997] mortgage secures."

In May 2003, Stanley assigned the 1997 mortgage to Wyman-Gordon pursuant to their

2002 settlement agreement.  In December 2007, A.J. Properties exercised its option to purchase

the 1997 mortgage from Wyman-Gordon.  Wyman-Gordon executed an assignment granting A.J.

Properties the 1997 mortgage "and all claims secured thereby."  In December 2010, Stanley

received payment from United Capitol's receiver in the amount of $659,000 as settlement of its

claim for the breached performance bond.

**B.      Procedural Background**

After learning that Stanley received payment from United Capitol's receiver, A.J.

Properties commenced this lawsuit in Worcester Superior Court on April 27, 2011.  The

amended complaint alleges that Stanley wrongfully obtained payment from United Capitol's

receiver and that A.J. Properties had been assigned the right to recover all funds paid to Stanley

by the receiver in settlement of Stanley's claim pursuant to the performance bond.  The amended

complaint alleges claims for conversion (Count One); unjust enrichment (Count Two); money

had and received (Count Three); constructive trust (Count Four); breach of contract (Count

Five); breach of the covenant of good faith and fair dealing (Count Six); and violation of Mass.

Gen. Laws ch. 93A, § 11 (Count Seven).  A.J. Properties also seeks a declaration of the rights of

the parties and damages in the amount paid by United Capitol to Stanley to settle Stanley's claim

under the bond ($659,000), with interests, fees, and costs (Counts Eight and Nine).

On February 4, 2013, the Court issued an order in which it determined that A.J.

Properties had indeed been assigned Stanley's interest in the proceeds of the performance bond

and was thus entitled to the money Stanley had recovered from United Capitol.[1]  It reached that

determination by applying the rule of law that "the assignment of a debt carries with it every

remedy or security that is incidental to the subject matter of the assignment and could have been

used or made available to the assignor."  *Quaranto*, 345 Mass. at 426-27.  The Court concluded

that "United Capitol's joint and several liability under the bond is a remedy incidental to

[Vargo's] duty to pay that was available to Stanley before it assigned that obligation; thus, the

assignment of [Vargo's] duty carried with it that of its surety."  (February 4, 2013 Order at 15).[2]

On February 19, 2013, Stanley moved for an interlocutory appeal, arguing that the

*Quaranto* rule did not apply.  Upon consideration of that motion, the Court determined that an

interlocutory appeal to the First Circuit was not the appropriate vehicle for the determination of

the contested issue, which was a matter of Massachusetts state law.  Instead, the Court suggested

certifying the question to the Supreme Judicial Court pursuant to Mass. S.J.C. Rule 1:03.  On

April 8, 2013, after the parties submitted briefing on the issue, the Court stayed the litigation and

certified the following question:

> Does the rule of *Quaranto v. Silverman*, 345 Mass. 423, 426-27 (1963), that "the
> assignment of a debt carries with it every remedy or security that is incidental to

---

[1] The Court's initial order was issued on September 5, 2012.  On December 10, Stanley moved for reconsideration and clarification of that order.  On February 4, 2013, the Court denied the motion for reconsideration, but granted the motion for clarification and issued an amended memorandum and order.

[2] The Court denied A.J. Properties' motion for summary judgment on the conversion claim, as it found that questions of fact remained as to Stanley's intent.  It also granted Stanley's motion for summary judgment as to the contract claims, but denied that motion as to all other claims.

the subject matter of the assignment and could have been used or made available to the assignor," extend to a situation where a mortgage and a surety agreement secured an obligation, and both the mortgagor and the surety breached that obligation prior to a written assignment of the mortgage, does the assignee, by operation of law, acquire the right against the surety's receiver for the surety's breach of its obligation?[3]

(Docket No. 58).

On September 5, 2014, the SJC issued its response to the certified question.  It held:

> Where a mortgage and a surety agreement secured an obligation, and both the mortgagor and the surety committed a breach of that obligation prior to a written assignment of the mortgage, the assignee does not necessarily acquire the right against the surety's receiver for the surety's breach of its obligation.

*A.J. Properties*, 469 Mass. at 592.  The court clarified that:

> A claim against the surety's receiver in the nature of damages for a breach of contract is neither security for an obligation nor in any other way an incident to the obligation secured by the mortgage; rather, it is a collateral cause of action. The value of this cause of action does not depend upon, appertain to, or follow an underlying obligation.  To the contrary, such a cause of action has free-standing value that is determinable upon the date of the surety's liquidation; on that date, it is not dependent on the mortgagor's obligation to perform, which already has been defaulted on.  If parties wish to assign such a cause of action, they may do so by manifesting their intent to do so, but, absent an express indication, assignment of such a cause of action will not be implied by an assignment of the mortgage and the obligations it secures.

*Id.* at 591-92 (citations and internal quotation marks omitted).

On September 23, 2014, Stanley renewed its second motion for summary judgment.  On October 22, 2014, A.J. Properties filed its second motion for summary judgment.

## II.    Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816,

---

[3] While the case was stayed, Stanley located new evidence—namely, a release signed by A.J. Properties in 2003—that it contended would warrant summary judgment in its favor.  On August 7, 2013, on Stanley's motion, the Court lifted the stay and allowed defendant to amend its answer.  On November 22, 2013, the Court denied Stanley's second motion for summary judgment (which had relied primarily on the newly-discovered release) and issued a memorandum to the SJC informing it that the certified question remained ripe for resolution.

822 (1st Cir. 1991) (internal quotation marks omitted).  Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[ ] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id*. at 256-57.

## III.   Analysis

### A.   Rights of the Parties to the Proceeds of the Performance Bond

A threshold issue with respect to nearly all of the claims of A.J. Properties is whether the series of assignments of rights and obligations relating to the 149 property included the performance bond.

Stanley contends that the SJC's holding that the *Quaranto* rule does not apply to Stanley's assignment to Wyman-Gordon resolves the entire matter and justifies summary judgment in its favor on all claims.  Specifically, it contends that Stanley's right against United Capitol's receiver is collateral to—and thus not incident to—the obligation secured by the

7

mortgage (which it assigned to Wyman-Gordon) because "'the mortgagor [Vargo] has committed a breach of its agreement to perform, and the entity acting as a paid surety on a performance bond [United Capitol] has been liquidated prior to the time of assignment . . . .'" (Def. Mem. 2) (quoting *A.J. Properties*, 469 Mass. at 591).  Stanley contends that what it possessed before Stanley assigned its mortgage to Wyman-Gordon was "'not a claim against the surety's receiver for performance or payment on the [performance] bond, but rather a claim against the surety's receiver in the nature of damages for a breach of contract.'"  (Def. Mem. 2) (quoting *A.J. Properties*, 469 Mass. at 591).

A.J. Properties contends that the SJC's response to the certified question does not affect the Court's February 4, 2013 summary judgment ruling, because the Court did not base its conclusion on the *Quaranto* rule.  Specifically, A.J. Properties points to the Court's original order, where, immediately after citing *Quaranto*, the Court stated, "[h]aving found that A.J. Properties was entitled to the proceeds of the performance bond under the terms of the assignment contracts, the Court turns to [the] conversion claim."  (February 4, 2013 Order at 15). Therefore, A.J. Properties contends that the Court did not base its original ruling on the *Quaranto* rule, but instead on the terms of the assignment contracts, which expressly indicated that Stanley would transfer its interest against United Capitol's receiver to Wyman-Gordon.

In fact, the Court's February 4, 2013 Order did rely on the application of the *Quaranto* rule to Stanley's assignment contracts.  The most obvious evidence of that reliance is that the Court would not have asked the SJC to decide an irrelevant question.  If the Court's original holding was based, not on the *Quaranto* rule, but on the express terms of the assignment contracts, the certified question to the SJC would have been entirely unnecessary.

Furthermore, in its February 4, 2013 Order, the Court cited the *Quaranto* rule and then held that "United Capitol's joint and several liability under the bond is a remedy incidental to Vargo Corp.'s duty to pay that was available to Stanley before it assigned that obligation; thus, the assignment of Vargo Corp.'s duty carried with it that of its surety." (February 4, 2013 Order at 15). Immediately after citing *Quaranto*, the Court did state that it had "found that A.J. Properties was entitled to the proceeds of the performance bond *under the terms of the assignment contracts*." (*Id.*) (emphasis added). But the argument of A.J. Properties—that the Court relied on the express terms of the assignment contracts instead of the *Quaranto* rule— takes the last clause of that sentence out of context. The Court *applied* the *Quaranto* rule to the ambiguous terms of the assignment contracts to reach its conclusion. But in light of the SJC's opinion, that application was incorrect. If the *Quaranto* rule is not applicable to the bond proceeds here because they were a collateral, rather than an incidental remedy, as the SJC has held, A.J. Properties is not entitled to the proceeds of the performance bond unless the terms of assignment contracts between Stanley and Wyman-Gordon "express[ly] [so] indicat[ed]." *A.J. Properties*, 469 Mass. at 592.

Although the Court's order stated that "it *appears* that this result [that the assignment of Vargo Corp.'s duty carried with it that of its surety] was *intended* by the 2002 Assignment Agreement," it further stated that the agreement "does not distinguish Stanley's obligations against Vargo Corp. from those against United Capitol." (February 4, 2013 Order at 15) (emphasis added). In other words, the Court found that the agreement did not expressly indicate that United Capitol's liability would *not* be assigned, nor did it find that the agreement expressly indicated that United Capitol's liability *would* be assigned. In short, the language of the assignment contracts was, and obviously remains, ambiguous, and that ambiguity caused the

Court to rely on the *Quaranto* rule in its original order.  But now, absent "express indication" in the terms of the assignment agreement, the right to bring a cause of action against a surety's receiver for the surety's breach of its obligation is not to be "implied by an assignment of the mortgage and the obligations it secures."  *A.J. Properties*, 469 Mass. at 592.

Accordingly, the assignment contracts, read in light of the SJC's ruling, did not assign Stanley's right to recover against United Capitol's receiver, because the terms were ambiguous and did not expressly indicate assignment of the bond proceeds was proper.  Therefore, A.J. Properties is not entitled to the proceeds of the performance bond recovered by Stanley.

### B.    Counts One and Nine:  Conversion and Post-Summary Judgment Conversion Claims

Having found that A.J. Properties is not entitled to the proceeds of the performance bond, the Court turns to its claims for conversion in Counts One and Nine of the amended complaint.[4]

Under Massachusetts law, a defendant may be liable for the tort of conversion if he "intentionally or wrongfully exercised acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . ."  *In re Brauer*, 452 Mass. 56, 67 (2008) (citations omitted).  The First Circuit has articulated the elements of the tort slightly differently, holding that a plaintiff alleging conversion under Massachusetts law must show that:

> (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property[;] (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993).

---

[4] After the Court's original summary judgment order, A.J. Properties amended its complaint to add a new conversion count for the post-summary judgment time period.

The undisputed facts show that only Stanley, not A.J. Properties, had an ownership or possessory interest in the personal property at issue, the proceeds of the breached performance bond.  Moreover, Stanley could not "wrongfully" exercise control over property that it had a rightful claim over.  Thus, Stanley cannot be liable to A.J. Properties for the alleged conversion as a matter of law, and is entitled to summary judgment as to Counts One and Nine.

### C.     Counts Two, Three, and Four:  Equitable Claims

The amended complaint alleges equitable claims for unjust enrichment (Count Two), money had and received (Count Three), and constructive trust (Count Four).

To prove unjust enrichment under Massachusetts law, a plaintiff must establish (1) that it conferred a benefit upon the defendant, (2) that the defendant accepted the benefit, and (3) that the defendant's retention of the benefit would be inequitable without payment for its value. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009).  "Money had and received" is essentially the same claim, but is limited to enrichment by money or its equivalent.  *Jelmoli Holding, Inc. v. Raymond James Fin. Servs., Inc.*, 470 F.3d 14, 17 n.2 (1st Cir. 2006).  Finally, a constructive trust is not a theory of liability, but rather an equitable remedy fashioned by courts to right a perceived wrong that results in unjust enrichment.  *Maffei v. Roman Catholic Archbishop*, 449 Mass. 235, 246 (2007).  Under any of those theories, "[t]he fact that a person has benefited from another is not of itself sufficient to require the other to make restitution therefor . . . .  Restitution is appropriate only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for one to retain it."  *Metropolitan Life Ins. Co. v. Cotter*, 464 Mass. 623, 643 (2013) (alterations and internal quotation marks omitted).

It is difficult to see why it would be unjust for Stanley to retain the proceeds of a performance bond in which A.J. Properties never had an ownership interest. A.J. Properties made a $400,000 investment, and in return, received the 1997 mortgage on the 149 property and the ability to collect rents on it. It thus received the benefit that it bargained for, and awarding it the proceeds of the performance bond at this stage would constitute a windfall rather than necessary equitable relief. Accordingly, Stanley is entitled to summary judgment as to Counts Two, Three, and Four.

### D.    Counts Five and Six:  Contract Claims

In its February 4, 2013 order, the Court granted summary judgment for Stanley as to the claims for breach of contract and breach of the implied covenant of good faith and fair dealing because A.J. Properties was never a party to a contract with Stanley. There appears to be no reason to revisit that conclusion. Accordingly, Stanley is entitled to summary judgment as to Counts Five and Six.

### E.    Count Seven:  Chapter 93A Claim

Count Seven of the amended complaint alleges that by collecting proceeds under the performance bond, Stanley violated Mass. Gen. Laws ch. 93A.

Chapter 93A makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. To trigger liability under Chapter 93A, the conduct in question must fall within "'the penumbra of some common-law, statutory, or other established concept of unfairness' or [be] 'immoral, unethical, oppressive or unscrupulous.'" *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000) (quoting *Cambridge Plating Co. v. Napco, Inc.*, 85 F.3d 752, 769 (1st Cir. 1996)).

In its previous order, the Court did not dismiss the Chapter 93A claim because any alleged unfair practices could have been derivative of the surviving tort (conversion) claim.  But because Stanley has now been granted summary judgment as to the conversion claim, summary judgment for Stanley is also now appropriate as to the Chapter 93A claim in Count Seven.

### F.      Count Eight:  Declaratory Relief

Count Eight of the amended complaint requests declaratory relief in the form of a judgment that A.J. Properties is the assignee of the 1997 mortgage and the performance bond, and that Stanley must accordingly turn over to it all proceeds that have been or will be paid by United Capitol's receiver pursuant to the bond, with interests, fees, and costs.

However, and as noted above, the *Quaranto* rule does not apply to this case and the terms of the assignment contracts with Wyman-Gordon do not expressly indicate that Stanley assigned its right to recover from United Capitol's receiver.  Therefore, Stanley, not A.J. Properties, has rightful ownership of the breached performance bond proceeds.  Accordingly, Stanley is entitled to summary judgment as to Count Eight.

## IV.    Conclusion

Accordingly, Stanley's motion for summary judgment will be granted and A.J. Properties' motion for summary judgment will be denied.

For the foregoing reasons:

1.      This Court's order dated February 4, 2013, is VACATED to the extent that it granted, in part, A.J. Properties' motion for partial summary judgment.  That motion is DENIED;

2.      A.J. Properties' second motion for summary judgment is DENIED; and

3.      Stanley's renewed motion for summary judgment is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: January 27, 2016